**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **IN RE:** | **CASE NO.  12-08816** |
| **SANDRA SANCHEZ RAMOS** | **Chapter   13** |
| **Debtor(s)** | **FILED & ENTERED ON 06/04/2013** |

## ORDER

### I. Factual Background

Before this court is Trustee's Report on Proposed Plan Confirmation under 11 U.S.C. § 1325 [Dkt. No. 22], Debtor's Response to Trustee's Report on Proposed Plan Confirmation under 11 U.S.C. § 1325 [Dkt. No. 24], and Trustee's Reply to Debtor's Response to Trustee's Report on Confirmation under 11 U.S.C. § 1325 and Memorandum of Law in Support Thereof [Dkt. No. 31]. For the reasons set forth below, confirmation of the debtor's chapter 13 plan is DENIED.

On October 31, 2012, Sandra Sanchez Ramos ("Debtor") filed a voluntary chapter 13 plan with its corresponding schedules establishing  Debtor's income, expenses, properties, and debts. On that same day, Debtor also filed Form 22C: Chapter 13 Statement of Monthly Income and Calculation of Commitment Period and Projected Disposable Income ("Means Test")[1]. According to line 11 of Debtor's Form 22C, Debtor's monthly gross income for the six months prior to her filing of bankruptcy was $1,674.34 (total of $1,205.00 in salary, $166.67 in summer bonus, $202.67 in tax

---

[1]  The means test is a quantitative methodology for bankruptcy courts to determine if a debtor can fund a plan under chapter 13 and thus fulfill her obligations.

refund and $100.00 in cost of living). Debtor is a household of one person and with that respective size and income; Debtor is below-median income with a thirty-six (36) months commitment period. Debtor's Schedules I and J further reveal that Debtor has a monthly net income of $1,385.75, after accounting for tax deductions from her monthly salary, and monthly expenses totaling $1,285.00 for a monthly income of $100.00. Debtor filed her proposed chapter 13 plan on October 31, 2012. In her proposed plan, Debtor provides for sixty (60) payments of $100.00, for a base of $6,000.00. Debtor provides for the payment of secured arrears to Banco Bilbao Vizcaya Argentaria ("Oriental Bank and Trust") in the amount of $1,832.05, payments for the priority claims filed by the Department of the Treasury in the amounts of $4.12 and $389.46, and attorneys' fees in the amount of $2,750.00. In total, the plan pays approximately five (5) percent of each general unsecured claim. On March 14, 2013, Jose R. Carrion (the "Trustee") filed an unfavorable report on Debtor's Plan. Amongst the objections raised by the Trustee, the Trustee objected that Debtor's plan did not state that all future tax refunds would be submitted to the Trustee in order to increase the base of the plan.[2] On March 18, 2013, Debtor filed her response to the Trustee's report on confirmation. This Court held a confirmation hearing on March 21, 2013. The next day, the Trustee requested leave to file a reply brief to Debtor's earlier response to the Trustee's report, which was granted.

**II. Trustee's Report on Proposed Plan Confirmation under 11 U.S.C. §1325**

In the Trustee's report on proposed plan confirmation under 11 U.S.C. § 1325, the Trustee argues that Debtor's proposed plan cannot be confirmed because it has two deficiencies. More

---

[2] In Trustee's memorandum, the Trustee noted that pursuant to the Debtor's Tax returns, Debtor has a history of receiving such tax refunds. In 2008, Debtor's tax refund demonstrated that she received a $67.00 tax refund. Similarly, in 2010, Debtor's tax return demonstrated that she received a $63.00 tax refund. In 2011, Debtor's tax return reveals similar trends, that debtor received a refund of $1,216.00. Although Debtor did not receive a tax refund in 2009 and she has yet to submit information in regards to her 2012 tax return, she nonetheless has a trend of receiving such.

specifically, Debtor's proposed plan (1) fails the disposable income test because the plan fails to provide that all future tax refunds will be submitted to the Trustee to increase the base of the plan and (2) violates § 1325(a)(5)(A) because the secured creditors in the plan have not accepted the plan. Namely, the Trustee points out that Cooperativa A/C Empledos Municipales de Guaynabo ("Cooperativa") filed an objection[3] to the confirmation because Debtor executed a loan sixty-nine (69) days before the filing of the bankruptcy petition. As such, the Trustee requested this Court to deny the Debtor's plan dated October 31, 2012.

In opposition, Debtor contends that the Trustee's arguments have no merit and thus her plan should be confirmed. Debtor's arguments are two-fold:

(1) In regards to the tax refund request, Debtor contends that inclusion of a provision in her plan in regards to future tax refunds is not a requirement under § 1325 and such requirement is contrary to the United States Supreme Court interpretation of the term "projected disposable income."  Debtor argues that the projected disposable income can only be calculated in a manner in accordance with Form 22C entitled "Statement of Current Income and Calculation of Commitment Period and Disposable Income." Therefore, only in unusual cases, may a bankruptcy court go further and take into account other known or virtually certain information about debtor's future income or expenses. The Debtor makes the argument that the Trustee has yet to meet the burden of showing to this court the existence of an "unusual circumstance" which would impact the Debtor's "known or virtually certain" changes in Debtor's future income that would warrant the inclusion of her tax refunds into the calculation into Form 22C. Further, Debtor contends that pursuant to § 1325(b),

---

[3] In the objection, Cooperativa requested that this loan debt be classified as nondischargeable pursuant to 11 U.S.C. §§ 531(a)(2)(A) and 523(a)(2)(C)(i)(I).

Debtor is not required to pay unsecured creditors an amount exceeding the amount as determined by her Form 22C, which in the Debtor's circumstances is zero ($0.00).

(2) In regards to the objection to confirmation by Cooperativa, Debtor argues that she has filed a separate response stating the reasons for which Cooperativa's objection should be overruled. (Dkt. No. 23).

In response to Debtor's opposition, the Trustee concentrated on the tax refund issue. The Trustee argues that Debtor's projected disposable income is not calculated through the Means Test and therefore, Debtor must submit her tax refund for the payment of unsecured creditors. The Trustee cites § 1325(b), where if a Trustee or creditor objects to a plan confirmation, a bankruptcy court cannot confirm a plan unless all claims are paid in full or the Debtor is distributing all her disposable income to fund such plan. Pursuant to § 1325(b)(2), disposable income is defined as the Debtor's current monthly income less the expenses necessary for Debtor's maintenance and support. Therefore, such current monthly income generally consists of the average income for six months prior to filing bankruptcy. Consequently, if the debtor's income is below median, debtor may deduct the full amount of the expenses necessary for the support and maintenance. On the contrary, if the debtor is above median income, such debtor may calculate projected disposable income using the Means Test. Naturally, the projected disposable income is reached after deducting the debtor's expenses from the current monthly income. In this instance, the Debtor is below median income, thus her projected disposable income cannot be calculated through the Means Test but instead through Schedules I and J. With such a backdrop, the Trustee proceeds to argue that tax refunds are disposable income and thus such tax refunds must be submitted to the Trustee to increase the base of the Debtor's plan within the property of the estate. The Trustee further points out that even with an

above median income debtor, if such debtor receives a tax refund, the debtor over-estimated his or her liability in the Means Test and therefore, such debtor cannot be rewarded by keeping such additional income to the detriment of his or her unsecured creditors. The Trustee further argues that even if the court resorts to the "unusual circumstances" standard as guided by the Supreme Court, Debtor's lack of a future tax refund inclusion meets such standard. Summarily, citing a list of cases, the Trustee contends that Debtor's future tax refund must be included in the property of the estate. The Trustee further clarifies that per Debtor's Schedule I and J, Debtor has a projected disposible income of $100.00. Debtor's tax liability was accounted on her Schedule I, which lists a tax and social security deduction of $73.12 from her gross monthly salary. Therefore, any additional future tax refund received would constitute additional income unaccounted for in the Debtor's schedules. With the trend of the Debtor receiving various refunds such as those Debtor received three times in the past four years, Debtor's tax refunds are inherently disposable income that must be submitted to the property of the estate. Conclusively, the Trustee requests this court to reject the Debtor's plan provided for above.

## III. Legal Analysis and Discussion

After reviewing the arguments of the parties, and the relevant law, this court concludes that confirmation of Debtor's plan must be denied because the Debtor's future tax returns are not being committed to her plan. This instant contention hinges on the issue of whether post-petition tax returns are to be considered property of estate, thus the analysis will be centered on such.

### A. Chapter 13 Disposable Income

The Bankruptcy Code empowers a bankruptcy court to calculate a debtor's projected disposable income. In doing so, the Supreme Court established the "forward-looking" approach.

Such approach mandates the court to begin by calculating disposable income and only in unusual cases, may the court go further to take into account other income or expenses that are known or virtually certain information about the debtor's future income or expenses. Hamilton v. Lanning, 130 S. Ct. 2464, 2474-75, 177 L. Ed. 2d 23 (2010). Therefore, if an unsecured creditor or the chapter 13 trustee objects to the confirmation of a proposed plan, § 1325(b)(1) provides that a bankruptcy court may not approve such plan unless such plan provides for the full repayment of unsecured creditors or provides that all of the debtor's "projected disposable income" will be received over the duration of the plan will be applied to plan payments.

Pursuant to the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA), for purposes of calculating the disposable income of a chapter 13 debtor whose income is below the median for his or her state, the phrase "amounts reasonably necessary to be expended" for the debtor's maintenance and support includes the full amount needed for "maintenance or support," but for a debtor with income that exceeds the state median, only certain specified expenses are included. 11 U.S.C §§ 707(b)(2), 1325(b)(2), (b)(2)(A)(i), (b)(3)(A). In other words, if the debtor's income is below median, debtor may deduct the full amount of the expenses "reasonably necessary" for the support and maintenance for the calculation of the projected disposable income.[4]

Regardless, post-petition, "projected," or "future" tax refunds have been held by courts in many Circuits to fall within the disposable income category. In re Michaud, 399 B.R. 365, 61 (Bankr. D. N.H. 2008); In re Jones, 301 B.R. 840 (Bankr. E.D. Mich. 2003); In re Barbutes, 436 B.R. 518 (Bankr. M.D. Tenn. 2010); In re Cleaver, 426 B.R. 390 (Bankr. D. N.M. 2010); In re Skougard, 438

---

[4]  On the contrary, if the debtor is above median income, such debtor may calculate projected disposable income using the Means Test.

B.R. 738 (Bankr. D. Utah 2010); In re Abner, 234 B.R. 825 (Bankr. M.D. Ala. 1999); In re Kruse, 406 B.R. 833 (Bankr. N.D. Iowa 2009); In re Mullen, 369 B.R. 25 (Bankr. D. Or. 2007); In re LaPlana, 363 B.R. 259 (Bankr. M.D. Fla. 2007); In re Harchar, 694 F.3d 639 (6th Cir. 2012); In re Murchek, 479 B.R. 521 (Bankr. N.D. Iowa 2012). The logic follows that since most wage-earning chapter 13 debtors anticipate annual tax refunds, a promise to pay tax refunds received during projected years of the plan to the trustee is necessary for confirmation of a chapter 13 plan. 11 U.S.C.A. § 1325(b)(1)(B); In re McElroy, 410 B.R. 845 (Bankr. N.D. Iowa 2008). The policy for including tax refunds associated with debtors' post-petition income in the chapter 13 plan is to deter debtors from overstating their tax withholding and thus to prevent destabilization of the pillars of the bankruptcy code. In re Diaz, 459 B.R. 86 (Bankr. C.D. Cal. 2011).

In determining whether projected tax refunds fall within the disposable income category, this court shall review this inquiry as a fact-based inquiry on a case-by-case basis. In re Carrasco, 395 B.R. 154 (Bankr. M.D. Fla. 2008). Accordingly, this court *judex non calculat* - does not calculate, and thus engages in the weighing of the following three factors: (1) whether the tax refund was projected disposable income as of date first plan payment was due; (2) whether the tax refund was "reasonably necessary" for the debtor to expend refund for maintenance or support of debtor or dependent of debtor; and (3) whether the tax refund was necessary and proper to fulfill the twin goals of the bankruptcy code.[5] In re Freeman, 86 F.3d 478 (6th Cir. 1996). The burden of proof is on the trustee to demonstrate that the debtor is not applying all his disposable income to plan payments and

---

[5] The twin goals of bankruptcy consist of ensuring an equitable distribution of the debtor's assets to his creditors and giving the debtor a "fresh start." See BFP v. Resolution Trust Corp., 511 U.S. 531, 563, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). The Bankruptcy Code accomplishes this goal by including the bulk majority of the debtor's property in the bankruptcy estate and distributing such inclusive property to creditors in accordance with various provisions of the Code. Finally, the Bankruptcy Court "discharges" the debtor's remaining debts unless those debts either fall into an exception or there is reason to deny a discharge altogether.

thus the trustee must establish by a preponderance of evidence likelihood and amount of any future tax refund. Education Assistance Corp. v. Zellner, 827 F.2d 1222 (8th Cir. 1987); In re Heath, 182 B.R. 557, (B.A.P. 9th Cir. 1995). The trustee can meet this burden, upon his or her showing that the debtor had consistently received tax refunds with similar withholding. Accordingly the trustee may point back to the past records to demonstrate that debtor's refunds have been received under similar income circumstances in the past. In re Murchek, 479 B.R. 521 (Bankr. N.D. Iowa 2012). Upon such establishment by the trustee, the burden of proof shifts to the debtor to demonstrate that no tax refunds were projected through the duration of her chapter 13 case. In re Abner, 234 B.R. 825 (Bankr. M.D. Ala. 1999).

Although generally, the debtor is expected to contribute their projected tax returns to their "projected disposable income," a bankruptcy court in this Circuit has recognized that equitable concerns within the bankruptcy code are flexible and permit chapter 13 debtors to retain some amount of an income tax refund. The equitable concern within the bankruptcy code is prompted by the concern that the debtor may require some cushion *quantum meruit* - as much as she deserves against unanticipated expenses and life emergencies that may arise *de die in diem* - from day to day.[6] The cushion thus exists to provide some flexibility as the debtor attempts to create a budget for the duration of a three-to-five year plan. In re Michaud, 399 B.R. 365 (Bankr. D. N.H. 2008). This cushion however hinges upon the specific circumstances in a particular case. In establishing the factors to be considered below, this court notes that the trustee has the obligation to creditors to file modified plan maximizing distribution creditors would receive. In re Midgley, 413 B.R. 820 (Bankr.

---

[6] A bankruptcy court held that a totality of circumstances standard should be considered including congressional intent along with the practicality of the situation. Thus, some chapter 13 debtors are entitled to additional assistance in the form of credit against their taxes and of some trustees' existing policy of allowing chapter 13 debtors to retain

D. Or. 2009). Regardless, some factors that can be considered in granting a sizable yet equitable cushion include: (1) the amount of debtor's tax refund, (2) the amount of the refund in comparison to the total tax due, (3) debtor's yearly income and expenses, (4) debtor's overall budget, (5) the number and nature of debtor's dependents, (6) the amount being paid into debtor's plan, (7) the dividend being paid to unsecured creditors, (8) the length of debtor's plan; (9) debtor's trend of debtor's tax refund; and (10) the ability to sustain the twin goals of the Bankruptcy Code. Id. Inherently, the burden for proposing such cushion is on the debtor for any unanticipated expenses by establishing in the chapter 13 plan that any refunds in excess of that cushion amount is to be paid to the trustee for distribution to the creditors. Upon such establishment, the burden shifts to the trustee and other parties in interest to show otherwise. After such meeting of the minds between the trustee, the creditor, and the debtor, such establishment is to be approved by the court through the plan confirmation process, and once approved is subjected to modification after confirmation. Id. However, such potential modifications should be avoided upon the filing of a tax return reflecting a refund in order to promote judicial economy. Id.

Upon establishing what is considered to be the debtor's "projected disposable income," such chapter 13 debtor is required to put forth such income into the property of the estate, for the trustee to be distributed to the payment of unsecured creditors. 11 U.S.C. § 1325(b)(1)(B), (b)(2); In re Green, 378 B.R. 30 (Bankr. N.D. N.Y. 2007); In re Boyd, 487 B.R. 669 (Bankr. E.D. N.C. 2013).

In this case presently before the court, the Debtor is a below median income debtor, thus her "projected disposable income" cannot be calculated through the Means Test but instead through her schedules I and J. Pursuant to § 1325(b)(2), disposable income is defined as the Debtor's current

---

up to $1,000 per year of any tax refunds as emergency funds to deal with unexpected expenses. 11 U.S.C.A. §§ 101(10A), 1325(b)(1)(B); In re Skougard, 438 B.R. 738 (Bankr. D. Utah 2010).

monthly income less the expenses necessary for Debtor's maintenance and support. Therefore, such current monthly income generally consists of the average income for six month prior to filing bankruptcy. Thus, if Debtor's income is below median, debtor may deduct the full amount of the expenses necessary for the support and maintenance. Regardless, the Debtor did not justify exactly why she failed to include her future projected tax returns into the calculation of her disposable income. Instead, the Debtor argues as if she is an above-income debtor in her calculation method of the "projected disposable income." Further, Debtor argues that the Trustee failed to meet the burden of "unusual circumstances" required to include her future projected tax returns into the calculation of her disposable income. These arguments have no merit.

As case law reveals, the Trustee has the initial burden to demonstrate that the debtor is not applying all his disposable income to plan payments and thus the trustee must establish by a preponderance of evidence likelihood and amount of any future tax refund. Thus the Trustee must be able to anticipate Debtor's "known or virtually certain" changes that may play role in Debtor's future income that would warrant the inclusion of her tax refunds into the calculation. This burden can be met by the trustee, upon his or her showing that the debtor had consistent pattern of received tax refunds with similar withholding. Accordingly the trustee may point back to the past records to demonstrate that debtor's refunds have been received under similar income circumstances in the past. In the instant case, the Trustee established this consistent pattern of received tax refunds with similar withholding. In Trustee's memorandum, the Trustee noted that pursuant to the Debtor's Tax returns, Debtor has a history of receiving such tax refunds. In 2008, Debtor's tax refund demonstrated that she received a $67.00 tax refund. Similarly, in 2010, Debtor's tax return demonstrated that she received a $63.00 tax refund. In 2011, Debtor's tax return reveals similar trends, that debtor received

a refund of $1,216.00. Although Debtor did not receive a tax refund in 2009 and she has yet to submit information in regards to her 2012 tax return, she nonetheless has a trend of receiving such.

Upon such establishment by the trustee, the burden of proof shifts to the debtor to demonstrate that no tax refunds were projected through the duration of her chapter 13 case. In re Abner, 234 B.R. 825 (Bankr. M.D. Ala. 1999). In line with the Supreme Court's decision's "unusual circumstances" standard, this court will apply the following test to determine whether projected tax refunds fall within the disposable income category. Namely, (1) whether the tax refund was projected disposable income as of date first plan payment was due; (2) whether the tax refund was "reasonably necessary" for the debtor to expend refund for maintenance or support of debtor or dependent of debtor; and (3) whether the tax refund was necessary and proper to fulfill the twin goals of the Bankruptcy Code. However, Debtor did not provide justifications for any of the above factors. Further, instead of providing information to address various cushion possibilities, to which the Debtor may be able to keep some of its projected tax refunds, Debtor relied on a blanket argument that the Trustee has yet to meet his burden of "unusual circumstances" to include the tax return into the disposable income to be distributed within the property of estate. However, this court recognizes the well-established Latin maxim *vigilantibus non dormientibus aequitas subvenit* - equity aids the vigilant, not the sleeping, that *generalia specialibus non derogant* - the general does not detract from the specific, in this instance, Debtor is required to raise specific arguments and not simply raise blanket arguments.

This court notes that as per Debtor's Schedule I and J, Debtor has a projected disposible income of $100.00. Debtor's tax liability was accounted for on her Schedule I, which lists a tax and social security deduction of $73.12 from her gross monthly salary. Therefore, any additional future

tax refund received would constitute additional income unaccounted for in the Debtor's schedules. With the trend of the Debtor receiving various refunds such as those Debtor received three times in the past four years, Debtor's future tax refunds during the life of her plan are disposable income that must be submitted to the property of the estate for the Trustee's distribution to the creditors.

**IV.  Conclusion**

Summarily, based on the above reasoning, this Court cannot approve Debtor's plan because it does not include her likely future tax refunds.

WHEREFORE, confirmation of Debtor's chapter 13 plan is DENIED and Local Bankruptcy Rule 3015-2(i) is invoked.

SO ORDERED

San Juan, Puerto Rico, this 4th day of  June, 2013.

Brian K. Tester
U.S. Bankruptcy Judge